MID AMERICA TITLE COMPANY,
Plaintiff–Appellant,

v.

James F. KIRK, Defendant–Appellee.

No. 91–3896.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1992.

Decided April 16, 1993.

Rehearing and Rehearing En Banc
Denied May 28, 1993.

Robert E. Wagner (argued), James J. Jagoda, Wallenstein, Wagner & Hattis, Chicago, IL, Amy L.H. Rockwell, Baxter Travenol Laboratories, Inc., Deerfield, IL, for plaintiff-appellant.

Joshua G. Vincent (argued), Thomas L. Browne, D. Kendall Griffith, Thomas H. James, Gary J. Bazydlo, Hinshaw & Culbertson, Chicago, IL, for defendant-appellee.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and GRANT, Senior District Judge.[*]

RIPPLE, Circuit Judge.

Mid America Title Company (Mid America) brought suit against James F. Kirk and Attorneys' Title Company (Attorneys' Title) for damages arising from an alleged infringement of Mid America's copyright on its property title commitment. The magistrate judge recommended that the copyright count go forward but that the accompanying state law-based misappropriation claim be dismissed. The defendants objected to the recommendation with respect to the copyright claim. The district court agreed with the defendants and dismissed the copyright infringement claim for failure to state a claim.[1] Mid America appeals this ruling.[2] We reverse and remand to the district court for further proceedings.

## I

## BACKGROUND

### A.

Mid America is a title insurance company engaged in providing title searches and title insurance as well as escrow services to buyers, sellers, and lending institutions. Following a search of the public record, Mid America draws up a title commitment report on a specific parcel of land to determine whether the company will issue title insurance. Mid America's title commitments are registered with the United States Copyright Office. Defendant James F. Kirk is an attorney employed by Attorneys' Title, an organization that underwrites real estate title insurance policies. This organization also requires that a title search be conducted as the basis for any commitment it makes for title insurance.

In April 1985 a bank asked Mid America for title insurance on a property in Frankfort, Illinois. Mid America produced Title Commitment No. 125266 following a search of Will County records and forwarded the information to the bank. The bank subsequently canceled the order for the commitment that it had placed with Mid America. Shortly thereafter, Mr. Kirk issued a commitment on the same property on behalf of Attorneys' Title. Both commitments bore the effective date of March 27, 1985. Mid America claims that Mr. Kirk's commitment "substantially copies" Mid America's earlier commitment. Am.Compl. at ¶ 19. Mr. Kirk was paid for his efforts and Mid America was not.

Mid America's Amended Complaint[3] alleges that, "[a]s written works comprising text and compilation of data created through substantial expenditures of time and effort, Mid America's title commitment reports are original works of authorship in which Mid America asserts a claim of copyright. Such copyright claims have been recognized and registered by the U.S. Copyright Office." Am.Compl. at ¶ 7. In addition, the Complaint asserts that "Commitment 125266 is a compilation of factual information, original with Mid America and is copyrightable subject matter under the Copyright Laws of the United States." Am.Compl. at ¶ 16.

### B.

A motion to dismiss was filed by the defendants and the matter was referred to

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

[1] The district court agreed with the magistrate judge that the misappropriation count did not state a claim; Mid America does not appeal this ruling.

[2] Attorneys' Title has been dismissed from this appeal.

[3] The Amended Complaint at issue here was filed on August 8, 1986.

a magistrate judge for a report and recommendation. The magistrate judge requested additional briefing on the effect of a recently decided case, *Feist Publications, Inc. v. Rural Telephone Service Co.,* ―― U.S. ――, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Taking into consideration the *Feist* analysis granting copyright protection to factual compilations in some circumstances, the magistrate judge rejected the parties' efforts to argue the motion to dismiss as if it were a motion for summary judgment.[4] Considering the motion as one to dismiss the Amended Complaint under Rule 12(b)(6), the magistrate judge determined that paragraphs 7 and 16 of the Amended Complaint were "broad enough to cover the claim [Mid America] now argues." Rep. and Rec. at 8. In making the recommendation, the magistrate judge noted that "Mid America, recognizing that the facts in its title commitments are not protectible, now contends that the selection and interpretation of those facts in its title commitments are copyrightable because its examiners use judgment in determining which land title facts should be included." *Id.* at 7.

### C.

The district court approved the magistrate judge's reading of *Feist* as reiterating that, while facts themselves cannot be protected, a compilation may be copyrightable if the selection, coordination, or arrangement " 'constitutes an original work of authorship.' " Mem.Op. at 3 (quoting *Feist,* ―― U.S. at ――, 111 S.Ct. at 1293). The district court accepted, however, the defendants' argument that the Amended Complaint failed to put them on notice of the specific elements of originality that allegedly had been infringed. In the district court's view, the Amended Complaint "is wholly devoid of any allegations of original compilation, selection, coordination or arrangement of information with respect to plaintiff's title commitment." Mem.Op. at 4.[5] The district court determined that this lack of specificity was fatal.

Determining that the "mechanical language employed by plaintiff is akin to the language used in standard legal forms," the district court held that the plaintiff had failed to state a claim and that granting leave to amend would be futile. Mem.Op. at 5. The district court went further, saying that, even if a proper allegation had been made, the plaintiff would not be able to prove that anything *original* had been copied. *Id.* at 6.

## II

## ANALYSIS

We review the grant of a motion to dismiss de novo. *Bowman v. City of Franklin,* 980 F.2d 1104, 1107 (7th Cir. 1992); *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir.1990). A complaint may not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) unless the plaintiff can prove no set of facts that would allow for recovery. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir. 1990). When reviewing the grant of a motion to dismiss, we must take as true all well-pleaded factual allegations and all reasonable inferences that may be drawn therefrom. *Bowman,* 980 F.2d at 1107.

### A.

We begin our analysis by setting out, as succinctly as possible, the submission of each of the parties.

---

**4.** Mid America had submitted an affidavit from its President, Thaddeus M. Bond, Sr., outlining the process required in selecting the pertinent facts, and the defendants submitted various forms of title commitments and title insurance binders in an attempt to illustrate the "boilerplate" nature of the commitment language. The magistrate judge found these submissions inadequate because they did not "specifically identif[y] which differences and similarities are significant" in the title commitments submitted. Rep. and Rec. at 7.

**5.** The district court suggested in a footnote that the submission of the Bond Affidavit, which the magistrate judge declined to consider, was an apparent attempt on the part of the plaintiffs to address this discrepancy. Mem.Op. at 4 n. 3.

Mid America submits that the district court misconstrued its copyright claim by focusing on the nature of the text sought to be protected rather than on the compilation of select data. Mid America maintains that it exercised "selective judgment and creativity in determining which information from the vast amount of land title data available sufficiently reflects upon marketable title." Appellant's Br. at 9–10. The resulting workproduct, it maintains, is entitled to protection as a "compilation" under 17 U.S.C. § 101. *Id.* Relying on *Feist* and *Key Publications, Inc. v. Chinatown Today Publishing Enterprises*, 945 F.2d 509 (2d Cir.1991), Mid America submits that the selection was independently created and has the required minimum degree of originality in the nature of the "selection, coordination, or arrangement of [the] data." *Key Publications*, 945 F.2d at 512. Novelty is not required, only a modicum of originality in the selection process. *Feist,* —— U.S. at ——, 111 S.Ct. at 1294. In this regard, Mid America notes that the district court demonstrated its misunderstanding of the claim when it determined that there could be no copyright infringement because the *formats* of Mid America's and Mr. Kirk's commitments were not the same. Finally, Mid America claims that the district court erred in ruling that the Amended Complaint is insufficient because it does not identify the specific original aspects of the commitment that were copyrighted. Mid America maintains that *Feist* does not alter the notice pleading rule embodied in Federal Rule of Civil Procedure 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."

Mr. Kirk argues that the Amended Complaint erroneously relied on the "sweat of the brow" theory of copyright protection that has been soundly rejected in *Feist.* He points out that Mid America never attempted to amend the Complaint following *Feist.* Rather, it chose to supplement it with an affidavit aimed at demonstrating original compilation. Mr. Kirk also maintains that failure to identify the specific original aspects of a compilation provides inadequate notice of the nature of the claim under Rule 8 because the originality component is so subtle. Mr. Kirk argues that facts alone are not copyrightable, and that the choosing of relevant facts to be included in the commitment is "so mechanical or routine as to require no creativity whatsoever." *Feist,* —— U.S. at ——, 111 S.Ct. at 1296. There is no room for creative choice, Mr. Kirk asserts, when all title examiners must cover the same ground and the examiner has a duty to make a diligent search of, and include in the commitment, all information bearing on the parcel. *See Victor Lalli Enters. v. Big Red Apple, Inc.*, 936 F.2d 671 (2d Cir.1991) (betting charts not copyrightable because all compilations will be the same unless a mistake is made). Finally, Mr. Kirk argues that the compilation is not copyrightable in this instance because the idea and the expression have "merged," and protection of the expression would be tantamount to permitting facts to be copyrighted. He goes on to say that the words and phrases used in describing required information in a commitment, such as the description of public easements, are standard legal boilerplate not subject to copyright protection.

### B.

Section 102(a) of the Copyright Act, 17 U.S.C. § 102(a), provides copyright protection to "original works of authorship." Facts alone are not copyrightable. 17 U.S.C. § 102(b); *Feist,* —— U.S. at ——, 111 S.Ct. at 1288; *Key Publications*, 945 F.2d at 512. Such protection may also be extended in some instances to a compilation, which the Act defines as "a work, formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works." 17 U.S.C. § 101. The protection of the copyright law is available only when the compilation reflects the exercise of judgment in determining what facts are to be included from the available data. *See Key Publications*, 945 F.2d at 513 (copyright protection could be extended to a

directory of businesses of specific interest to the Chinese community).

The Supreme Court recently took the opportunity to address this narrow area of copyright protection when it denied protection in *Feist* to the alphabetized white pages of telephone books. The Court rejected the 'sweat of the brow" test.[6] Rather, it focused on the Copyright Act's requirement of *originality:*

> Factual compilations, on the other hand, may possess the requisite originality. The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.

*Id.* —— U.S. at ——, 111 S.Ct. at 1289. Nevertheless, because the underlying facts remain in the public domain,

> the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.

*Id.*

■ In light of these principles, we believe that the Amended Complaint adequately states a claim of copyright infringement. It is true that the Amended Complaint includes language that suggests

reliance on the "sweat of the brow" theory that *Feist* has soundly rejected. *See Feist,* —— U.S. at ——, 111 S.Ct. at 1292–93.[7] However, the Amended Complaint also states clearly that the claim is for protection of "a compilation of factual information, original with Mid America." Am. Compl. at ¶ 16. As we have already noted, we can uphold the dismissal of a complaint only if the plaintiff can prove no set of facts that would allow for recovery. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. Here the defendants were put on notice that compilation was at issue and shall have abundant opportunity to pursue the matter in detail through the discovery process. Federal Rule of Civil Procedure 8(a) states:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief....

"A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents." *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992). Further, consistent with our obligation to construe complaints liberally, "the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Id.*[8]

■ We cannot accept the argument that plaintiffs in cases such as this one must be held to a particularity requirement akin to Federal Rule of Civil Procedure 9(b).[9] As Chief Justice Rehnquist just recently reminded us in *Leatherman v. Tarrant County Narcotics Intelligence and Coor-*

---

**6.** In *Feist,* the Court made clear that the requirement of originality in a copyrightable work is a "constitutionally mandated prerequisite.... [that] predate[s] the Copyright Act of 1909." *Feist,* —— U.S. at ——, 111 S.Ct. at 1290. The Court went on to describe the ways in which the lower courts have strayed from this notion, singling out the "sweat of the brow" theory, which would allow for copyright protection on the strength of sheer industry. *Id.* at ——, 111 S.Ct. at 1291.

**7.** Mid America did not amend the Complaint following the *Feist* decision, assuming, as it does here, that the statement of copyright claim suf-

ficed under the notice pleading scheme established by Federal Rule of Civil Procedure 8.

**8.** "Complaints [for copyright infringement] simply alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant, have been held sufficient under the rules." 5 CHARLES A. WRIGHT & ARTHUR A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1237, at 283 (1990).

**9.** Federal Rule of Civil Procedure 9(b) requires that allegations of fraud or mistake be pled with particularity.

*dination Unit,* ⎯⎯ U.S. ⎯⎯, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), exceptions to the requirements of Rule 8 "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Id.* at ⎯⎯, 113 S.Ct. at 1163.[10] We do not read *Feist* to require additional detail at the pleading stage. The element of copyrightable originality in a compilation claim is often subtle, and therefore a determination at the pleading stage will often be impossible. Indeed, as Judge Winter of the Second Circuit has pointed out, "[w]hether a compilation has been infringed requires a somewhat more refined analysis than is applied in a case involving a wholly original work." *Key Publications,* 945 F.2d at 514. In this regard, we note that *Feist* was decided on the basis of a summary judgment record. Indeed, the fact that the parties here have attempted to go beyond the Amended Complaint, in a fashion more suited to a summary judgment motion, demonstrates the practical necessity of dealing with this issue on the basis of something more than the Complaint.

**C.**

█ In an effort to show that the plaintiff cannot prove a set of facts that would justify recovery, Mr. Kirk maintains that the standards for a title examination and the limited body of facts upon which the examination is based render the process of selection "so mechanical or routine as to require no creativity whatsoever." *Feist,* ⎯⎯ U.S. at ⎯⎯, 111 S.Ct. at 1296 (quoted in Appellee's Br. at 20). Mr. Kirk submits

that all examiners will seek out the same data and that, effectively, all title commitments will be essentially identical. He invites our attention to *Eckes v. Card Prices Update,* 736 F.2d 859 (2d Cir.1984) (choice of 5,000 out of a total of 18,000 baseball cards on the basis of their value copyrightable), and *Key Publications,* 945 F.2d at 509 (compilation of businesses of special interest to the Chinese community copyrightable), to illustrate, by contrast, cases where the particular basis for the selection of facts rendered the resulting compilation worthy of copyright protection. Mr. Kirk's assertion that all title commitments will be essentially identical is closely aligned with the additional argument that the universe of information available to the examiner is so limited that there is simply no room for the exercise of creative judgment. *See Victor Lalli,* 936 F.2d at 672 (the facts included in the betting chart compilations are uniform and will vary only if an error is made); *Financial Info., Inc. v. Moody's Inv. Serv.,* 808 F.2d 204, 207–208 (2d Cir. 1986), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987) (the "compilation" of five items of information that were readily available and required no exercise of discretion not copyrightable).

These matters are more properly addressed at the summary judgment stage.[11] At that point, the full range of information may be evaluated by the court. Likewise, Mr. Kirk's argument that this case demonstrates a merger of idea and expression that results in no copyrightable material must await further proceedings in the dis-

---

**10.** The Court noted that it had no occasion to consider whether the claims of qualified immunity from trial itself might require a heightened pleading standard. *Leatherman,* ⎯⎯ U.S. at ⎯⎯, 113 S.Ct. at 1162.

**11.** We note that the decisions in *Eckes, Key Publications, Moody's,* and *Victor Lalli* were made on *post-trial* review of the district courts' findings.

The district court also relied on several cases that declined to find legal forms copyrightable. *Donald v. UARCO Business Forms,* 478 F.2d 764 (8th Cir.1973); *M.M. Business Forms Corp. v. UARCO, Inc.,* 472 F.2d 1137 (6th Cir.1973); *Donald v. Zack Meyer's T.V. Sales & Serv.,* 426 F.2d 1027 (5th Cir.1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971). Without

further analysis, the district court merely said that "the mechanical language employed by plaintiff is akin to the language used in standard legal forms." Mem.Op. at 5. In none of these cases was the matter decided on the pleadings. Moreover, in each of these cases the plaintiff sought copyright protection on the language, much of it legal boilerplate, included in a conditional sales contract (*Zack Meyer's*) and a service agreement (*M.M. Business* and *UARCO Business Forms*), but the appellate courts could not identify the requisite spark of creativity. As we have already noted, Mid America seeks protection not of the language and the format but of the choice of data that is embodied in that language.

trict court. At this point, we concern ourselves only with whether the Amended Complaint states a claim upon which relief may be granted. *Feist* imposes no special pleading requirement on the plaintiff. Mid America has pled, sparely but adequately, that it has a copyrightable interest in its compilation of data that resulted in the title commitment at issue. Whether Mid America can survive a motion for summary judgment is a question that will be addressed in further proceedings in the district court and upon which we express no opinion.

### Conclusion

For the foregoing reasons, we reverse the dismissal of the copyright infringement claim and remand for further proceedings.

REVERSED AND REMANDED.