**Darryl A. FORD, Plaintiff,**

v.

**Jon DAVIS and Jeffrey Chapman, Defendants.**

No. 93 C 6000.

United States District Court, N.D. Illinois, Eastern Division.

March 9, 1995.

Darryl A. Ford, pro se.

Geri Lynn Yanow, John F. McGuire, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendants.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. For the follow-

ing reasons, the motion is granted in part and denied in part.

## I. BACKGROUND [1]

This matter arises from a confrontation between Plaintiff Darryl A. Ford ("Ford") and the two Defendant police officers, Jon Davis and Jeffrey Chapman (collectively "Defendants"), which eventually led to Ford's arrest. Ford brings this civil rights action pursuant to 42 U.S.C. § 1983. Ford alleges that on or about March 15, 1993, Defendants searched him for drugs, illegal weapons, and other contraband, but found nothing on his person. However, Chapman eventually did find a bag containing an illegal substance in a nearby field and charged Ford with the unlawful possession of that substance. Ford claims that Defendants physically abused him for a three to five minute period using their fists, feet, and flashlights and then arrested him in violation of his constitutional rights. Furthermore, Ford claims that Defendants then transported him to the station, charged him with unlawful possession of a controlled substance, and denied him medical treatment.

The next day, March 16, 1993, pursuant to Ford's request, unknown police officers transported Ford to the hospital where he was examined, prescribed pain medication, and released back to police custody. Ford was transported to the Cook County Jail where he was imprisoned. Once the Cook County Jail obtained custody of Ford, he was admitted to the Cermak Hospital for further examination and treatment for injuries which Ford alleges resulted from Defendants' abuse.

Ford alleged federal claims in Counts I and II, and a pendant state law claim in Count III. In Count I, Ford asserts two distinct violations of his civil rights: first, a false arrest predicated on a lack of evidence probable cause; and, second, excessive use of force. In Count II, Ford alleges that Defendants denied him necessary medical care. In Count III, Ford contends that Defendants' unlawful use of force amounted to an intentional battery under Illinois tort law. Ford seeks a declaratory judgment, compensatory

damages in the amount of $500,000, and an unspecified punitive damages sum.

## II. DISCUSSION

In deciding a motion to dismiss, the court accepts all well-pleaded factual allegations as true, as well as the reasonable inferences that may be drawn from those allegations. *Mid America Title Co. v. Kirk,* 991 F.2d 417, 419 (7th Cir.1993). The complaint need not specify the correct legal theory nor point to the correct statute. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Because federal courts simply require "notice pleading," this court must construe pleadings liberally. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). In construing reasonable inferences, however, the court need not stretch allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago,* 777 F.Supp. 1437, 1440 (N.D.Ill.1991). Furthermore, *pro se* complaints are to be construed more liberally than others. *Chenh v. Logan,* 42 F.3d 1391, 1391 (7th Cir.1994). The liberal construction relates to both the *pro se* indigent plaintiff's factual allegations and their legal theories. *Nietzke v. Williams,* 490 U.S. 319, 330–31 n. 5, 109 S.Ct. 1827, 1834 n. 5, 104 L.Ed.2d 338 (1989). *Pro se* civil rights complaints may be dismissed only "if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 378 (7th Cir.1988).

### A. BATTERY CLAIM

The court first addresses whether Ford's battery claim should be dismissed due to the Illinois' statute of limitations. The statute of limitations for a civil suit in federal court is controlled by the relevant state statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1948–49, 85 L.Ed.2d 254 (1985). The Illinois Local Government Tort Immunity Act provides as follows: "No civil action may be commenced in any court against a local entity or its employ-

---

1. The following Background is based upon Plaintiff's Second Amended Complaint.

ees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8–101 (1992). In this case, Ford alleges that his civil rights were violated on March 15 and 16, 1993. Therefore, any pendant state law claim should have been made prior to March 17, 1994. *Id.* Although Ford filed the original complaint within one year after he sustained the alleged injuries, he did not allege a state law battery claim until October 22, 1994, when Ford filed the Second Amended complaint.[2] Thus, Defendants argue, the battery claim should be dismissed as time-barred. The court disagrees.

Rule 15(c) of the Federal Rules of Civil Procedure was amended to provide for broad 'relation back' of pleadings. *Worthington v. Wilson,* 8 F.3d 1253, 1255 (7th Cir.1993). Rule 15(c) provides, in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . [and when the defendant] (3)(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense of the merits
> . . . .

Fed.R.Civ.P. 15(c). "A plaintiff may amend his complaint under Rule 15(c) to change the theory or statute under which recovery is sought." *Worthington,* 8 F.3d at 1256.

Ford added the pendent state law battery claim, Count III, over nineteen months after the injury. However, Ford filed the original complaint on October 1, 1993, within seven months of the alleged constitutional violations and tortious conduct. The original complaint was filed, therefore, well within the limitations period. Thus, if the court determines that the new claim, Count III, sufficiently "relates back" to the original complaint filed well within Illinois' one year statute of limitations, then the claim is not time-barred.

The court finds that the state law battery claim does relate back to the allegations in the original complaint. Battery is defined in Illinois as the intentional offensive touching of another person without consent to the contact. *Pechan v. Dynapro, Inc.,* 251 Ill.App.3d 1072, 190 Ill.Dec. 698, 622 N.E.2d 108 (1993). Although not specifically labelled, all of these elements existed in Ford's original *pro se* complaint. Ford alleged in the original complaint that the police officers intentionally struck him with their hands, feet, and flashlight. Ford also alleged that he did not consent to the touching. Ford's Illinois battery claim clearly arose from the same "conduct, transaction, or occurrences" set forth in Ford's original complaint, which was based solely on an excessive use of force claim. Defendants do not allege that they lacked notice or that their defense would be prejudiced due to the new claim. Furthermore, the court finds that Defendants had sufficient notice and opportunity to investigate the facts necessary to defend the battery claim, and that the claim is not time-barred. Accordingly, the new battery claim relates back to the date of the original pleading and defendants' motion to dismiss Count III is denied.

### B. FALSE ARREST

Plaintiff apparently alleges in Count I of his complaint that the two defendants lacked probable cause to search him, planted evidence, and unlawfully charged and seized him for possession of an unlawful controlled substance. Attached to Defendants' motion is a Certified Statement of Conviction evincing that Ford pleaded guilty to unlawfully possessing a controlled substance, for which he was sentenced to six years in the Illinois Department of Corrections. A necessary predicate to any unlawful arrest claim under § 1983 is the absence of probable cause. *Jones v. Webb,* 45 F.3d 178, 181 (7th Cir. 1995). However, in the present case, Ford's guilty plea and ultimate conviction collaterally estops Ford from reasserting a lack of

---

**2.** The Second Amended Complaint was filed over seven months after the one-year statute of limita- tions.

probable cause. *Currier v. Baldridge,* 914 F.2d 993, 996 (7th Cir.1990). The existence of probable cause bars a § 1983 action alleging wrongful arrest. *Currier,* 914 F.2d at 996 (citing *Kompare v. Stein,* 801 F.2d 883, 891 (7th Cir.1986)). Accordingly, the portion of Count I alleging a wrongful arrest is dismissed.

## C. EXCESSIVE USE OF FORCE

Count I includes an allegation that Defendants used excessive force in arresting Ford. Defendants did not address this allegation in their motion to dismiss. However, the court notes the existence of the allegation and addresses the issue *sua sponte. See Health Cost Controls v. Skinner,* 44 F.3d 535, 538 (7th Cir.1995) (noting that a court may address issues regarding dismissal of a claim on its own, without a pending motion, as long as the plaintiff has had a reasonable opportunity to be heard or amend its complaint).

To succeed on a § 1983 claim, a plaintiff must show that the defendant, acting under color of state law, deprived him of rights protected by the Constitution or federal law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The defendants were police officers undoubtedly acting under color of state law. Thus, if Ford alleges that Defendants deprived him or a Constitutional or federal right, he has successfully pleaded a § 1983 claim.

■ In the present case, Ford alleges that Defendants used excessive force in his arrest. Excessive force claims relating to an arrest or other seizure must be analyzed under the Fourth Amendment's objective reasonableness standard. *Jones,* 45 F.3d at 183. The court must ask "whether the officer[s'] actions are 'objectively reasonable' in light of the facts and circumstances confronting [them], without regard to [their] underlying intent or motivation." *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)). Relevant factors to the objective reasonableness inquiry "include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The court must allow for "the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.*

■ Accepting Ford's allegations as true, *Mid America,* 991 F.2d at 419, the Second Amended Complaint sufficiently alleges that the two Defendants used unreasonable and excessive force in the seizure of Ford. The Second Amended Complaint alleges the following: that Davis punched Ford in the face with his fists; that Chapman then joined Davis and beat Ford until he fell to the ground; that while he was on the ground, one of the Defendants struck Ford with something that resembled a flashlight; and that the beating continued for three to five minutes. The Complaint further alleges that Ford did nothing to provoke the police officers, and that Ford screamed and pleaded with the two policemen to halt the beating. Thus, the allegations are sufficient to establish that Defendants used unreasonable force in light of the facts and circumstances confronting them. Accordingly, Ford has successfully pleaded a § 1983 claim for excessive use of force in violation of the Fourth Amendment.

The court notes that the doctrine of qualified immunity could protect Defendants although Defendants have not raised the issue. Since qualified immunity is "an immunity from suit rather than a mere defense to liability," *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)), the court may raise the issue on its own and resolve the issue prior to discovery. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th Cir.1994). The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions to the extent that "their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

In assessing the applicability of the doctrine of qualified immunity, the Seventh Circuit Court of Appeals articulated a two step analysis: " '(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?' " *Zorzi v. County of Putnam,* 30 F.3d 885, 892 (7th Cir.1994) (quoting *Rakovich v. Wade,* 850 F.2d 1180, 1210 (7th Cir.1988)). If both steps are sufficiently met, the court must find that qualified immunity does not apply. *Zorzi,* 30 F.3d at 892.

In the case *sub judice,* the doctrine of qualified immunity does not benefit Defendants. Since the court has already determined that Ford has sufficiently pleaded a constitutional violation, the crucial inquiry is "whether the contours of the alleged right were sufficiently clear at the time of the conduct so that 'a reasonable official' would understand that what he is doing violates that right." *Walker v. Shansky,* 28 F.3d 666, 670 (7th Cir.1994) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). The court finds that the constitutional limitations in question are clear and that a reasonable police officer would understand that hitting an arrestee with fists, feet and flashlights when not needed to effectuate the arrest in violation of the Fourth Amendment. Since both parts of the Seventh Circuit's analysis exist, the court finds that the doctrine of qualified immunity does not shield either Defendant from liability. Accordingly, Defendants' motion to dismiss the excessive force allegation in Count I is denied.

### D. DENIAL OF MEDICAL CARE

Ford next alleges in Count II that Defendants denied him necessary medical care. The court liberally construes Count II as an attempt to allege a violation of the Eighth Amendment right to be free from cruel and unusual punishment. *See, e.g., Wilson,* 839 F.2d at 378. The court notes that it had previously admonished Ford in a

minute order from filing a complaint repeating the same allegations under the Eighth Amendment since Ford admitted receiving medical attention twice within two days after his arrest. (Doc. # 38.) Accordingly, this claim is dismissed.

Nevertheless, the court will address the sufficiency of the claim. *Wilson,* 839 F.2d at 378. The court now turns to plaintiff's allegations in Count II. To survive dismissal, Ford must show that his medical condition was so serious that an objectively reasonable officer would think his life was threatened or that "the wounds posed a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones,* 936 F.2d 971, 972 (7th Cir.1991). Moreover, Ford must allege that Defendants acted deliberately indifferent to his serious medical needs, *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), and that the delay in receiving medical attention caused him substantial harm. *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974). The test for deliberate indifference requires that prison officials or police officers "have actual knowledge of impending harm rather than a mere suspicion" and must "consciously and culpably refuse to take steps to prevent the harm." *Campbell v. Greer,* 831 F.2d 700, 702 (7th Cir.1987). If the alleged harm is not immediate, if the officials don't know about the harm, or if the officials were not able to do anything about the harm, then the suit must be dismissed since the defendants were not deliberately indifferent to the plaintiff's medical needs. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992). Mere negligence is not enough to satisfy deliberate indifference. *Id.* Even allegations of gross negligence do not rise to the level of deliberate indifference. *Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir.1991).

Ford alleges that because he was bleeding, bruised, and swollen, Defendants should have afforded him medical attention. However, Ford admits that he first requested medical attention sixteen hours after his arrest, and that he was taken to the University of Chicago Hospital immediately upon his request. Thereafter, Ford alleges that

he received a second medical examination and more treatment at the Cermak Hospital prior to imprisonment in the Cook County Jail.

Plaintiff did not allege that his injuries were life threatening, posed a risk of needless pain, or that lingering disability could result if they were not treated at once. Ford alleged that his face was swollen, that he had two black eyes, bruised ribs, and a bruised back. Thus, although the injuries may have caused great pain at the time of infliction, the alleged wounds did not meet the definition of "serious wounds" from which a reasonable officer could determine immediate medical treatment was necessary. *Davis*, 936 F.2d at 972. Moreover, Count II has no allegation that Defendants denied medical care to Ford. In fact, the allegations indicate that Defendants were simply the arresting officers and that, immediately after the arrest, they took Ford to the police station, charged him with criminal possession of a controlled substance, and never came in contact with Ford again. Ford was later taken to the University of Chicago Hospital as well as the Cook County Jail where he underwent two separate medical examinations and treatment for his injuries.

These allegations are not sufficient to meet the deliberate indifference standard. At most, Ford has pleaded simple negligence. However, even gross negligence is not enough. Ford has not pleaded that the officers had "actual knowledge of impending harm" and "consciously and culpably refused to take steps to prevent the harm." *Campbell*, 831 F.2d at 702. Absent allegations against the individual defendants showing their personal involvement and deliberate indifference, the claim in Count II cannot stand. Although the allegations may be sufficient to prove an excessive use of force, Ford's allegations do not rise to a claim of unconstitutional due process denial of medical care. Accordingly, Defendants' motion to dismiss Count II is granted on its merits as well.

### III.  CONCLUSION

For the foregoing reasons, the court grants Defendants' motion as to the false arrest claim in Count I. Count II is similarly dismissed. Dismissal is with prejudice since Ford was given this final opportunity to file an amended complaint. Since Ford has sufficiently alleged an excessive use of force claim in Count I, and since the state law battery claim in Count III relates back to the allegations in the original complaint, Defendants' motion to dismiss as to these claims is denied.

IT IS SO ORDERED.